UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**DEANDRE DAVIS,**<br><br>Defendant. | Case No. 25-cr-170 (ACR) |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm) and under 18. U.S.C. § 3142(d)(1)(A)(iii) (On Probation or Parole), as the Defendant, Deandre Davis, is charged with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of Ammunition), 22 D.C. Code §§ 4503(a)(1); (b)(1) (Unlawful Possession of a Firearm (Prior Conviction)), and 22 D.C. Code §§ 4514(a); (c)(3) (Possession of a Prohibited Weapon). The Defendant stands before this Court charged with illegally possessing a loaded ghost gun, with one round of ammunition in the chamber and an additional six rounds in the magazine. Despite his prior felony convictions for Assault with Significant Bodily Injury and Attempted Carrying a Pistol Without a License in D.C. Superior Court case 2023-FD3-002008, for which he is currently on probation, and his knowledge that it was illegal for him to possess a firearm, the Defendant carried a loaded gun concealed on his person while in the community. The Defendant's troubling criminal history of assaultive behavior and unlawful gun possession, as well as his prior noncompliance with conditions of release, puts the community at risk. Pursuant to 18 U.S.C. § 3142(g), the relevant factors support pretrial detention.

## BACKGROUND

On June 11, 2025, an indictment was returned charging the Defendant with one count Unlawful Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1), one count Unlawful Possession of a Firearm (Prior Conviction) in violation of 22 D.C. Code §§ 4503(a)(1); (b)(1), and one count Possession of a Prohibited Weapon in violation of 22 D.C. Code §§ 4514(a). On June 17, 2025, an initial appearance was held before the Honorable Magistrate Judge Moxila A. Upadhyaya. After the United States made a motion for pretrial detention, the Court set the detention hearing for June 17, 2025.

### *The Instant Offense*

On Monday, May 19, 2025, at around 7:40 p.m., members of the Metropolitan Police Department's Robbery Suppression Unit ("RSU") were patrolling near the 2100 block of Alabama Avenue in Southeast, Washington D.C. RSU members were patrolling in an unmarked car, traveling southbound along Alabama Avenue when they observed the Defendant standing with two other individuals in front of a storefront. RSU members observed the Defendant actively smoking. They observed the cigarette emit a cloud of white smoke. Based on their training and experience, RSU members believed the smoke to be consistent with burnt marijuana. The Defendant then handed the marijuana cigarette to one of the other individuals, who drew a puff before passing it to the third individual. After making the observations, RSU members exited their vehicle to stop the Defendant and the other two individuals. As they approached, RSU members were able to smell the distinct odor of burnt marijuana. Upon observing law enforcement, the individual holding the marijuana cigarette extinguished and discarded the marijuana cigarette. The Defendant and the other two individuals were arrested on probable cause for public consumption of marijuana.

The Defendant was searched incident to arrest and the officers felt a hard, L-shaped object in the Defendant's groin area. RSU members lifted the Defendant's hoodie and pulled his pants, which included two layers of compression shorts. They observed the baseplate of a magazine stamped with the Amend2 logo, which appeared to be inserted into the handle of a firearm tucked in the Defendant's groin area.



**Figure 1 – Photograph of Firearm Recovered from the Defendant**

RSU members photographed their observations and recovered a black semi-automatic firearm from the Defendant's person.



**Figure 2 – Firearm Recovery**

The firearm was determined to be a black Polymer 80 (ghost gun) 9mm semi-automatic pistol with no serial number. The firearm was loaded with one bullet in the chamber and an additional 6 rounds of ammunition in the magazine.

Law enforcement conducted a database check and determined that the Defendant did not have a lawful license to carry a firearm.



**Figure 3 - Firearm**

4



**Figure 4 – Ammunition Recovered from Magazine**

Furthermore, a criminal history check confirmed that the Defendant was previously convicted of a crime punishable by a term of imprisonment exceeding one year, in D.C. case number 2023-FD3-002008. On July 7, 2023, the Defendant was sentenced on that charge to 18 months of incarceration, execution of sentence suspended to all but 6 months, and one year of probation. As a result, at the time he possessed the firearm, the Defendant was aware that he had a prior conviction for a crime punishable by more than one year of imprisonment.

### *Defendant's Criminal History*

As previously stated, the Defendant is currently on probation for 2023-FD3-002008. On March 27, 2023, Metropolitan Police Department ("MPD") officers responded to a domestic violence assault involving the Defendant and the victim, who was the mother of his child. During the altercation, the Defendant choked and slammed the victim into a wall. While she was on the ground, he then punched her multiple times in the face, breaking her jaw. After seriously injuring the victim, the Defendant fled the location. The victim reported the incident and was subsequently admitted to George Washington University hospital.

A week after the incident, and on April 3, 2023, the Defendant was arrested after the victim saw the Defendant waiting outside her son's daycare.[1] During a search incident to arrest, law enforcement recovered an unlicensed .40 caliber ghost gun from the Defendant's front waistband. The gun was loaded with one round in the chamber and two rounds in the magazine.



**Figure 5 – Firearm Recovered from Defendant on April 3, 2023**

The Defendant was charged in D.C. Superior Court in case number 2023-FD3-002008. On May 1, 2023, the Defendant pleaded guilty to Assault with Significant Bodily Injury and Attempted Carrying a Pistol Without a License.

Though the above incident is the defendant's only prior firearms conviction, he has

---

[1] The victim filed for a protective order shortly after the assault. This was not the first instance of the Defendant exhibiting violent behavior against the victim. In 2020, police were called after the Defendant and the victim fought, and the Defendant struck the victim in the face **(CCN 20167566).** In 2022, the Defendant and the victim argued over money and the Defendant struck the victim in the mouth **(CCN 22028412).** That same year the Defendant and victim argued over childcare arrangements and the Defendant kicked the victim's door several times, causing damage **(CCN 22183361).** During another argument with the victim over money, the Defendant punched the victim in the back **(CCN 22014697).**

multiple arrests for similar conduct.² In January 2023, the Defendant was arrested in the District of Columbia for Carrying a Pistol Without a License after a stolen firearm was recovered from his mother's vehicle. At the time of the arrest, the vehicle keys were found in the Defendant's possession. This case did not result in charges.

## LEGAL AUTHORITY AND ARGUMENT

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, and *Williams*, 798 F. Supp. at 36.

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142 (e). The Act provides however, for certain crimes, that there is a rebuttable presumption that no conditions or combination of conditions will assure the safety of the community. *See id.*

---

² The United States is respectfully drawing the Court's attention to page 4 of the Pretrial Services Report.

7

"For the purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm) because the Defendant is charged with committing a firearm offense. The United States is also seeking detention pursuant to 18. U.S.C. § 3142(d)(1)(A)(iii) (On Probation or Parole) as the Defendant was on probation in D.C. Superior Court case 2023-FD3-002008 at the time of the instant offense. A review and understanding of the facts and circumstances in the instant matter demonstrate that there are no conditions or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1). All four § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

**I.      The Nature and Circumstances of this Offense Merits Detention.**

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The Defendant is indicted with serious offenses carrying significant penalties. For violating 18 U.S.C. § 922(g), the Defendant faces a maximum sentence of up to 15 years imprisonment pursuant to 18 U.S.C. § 924(a)(8).   For violating 22 D.C. Code §§ 4503(a)(1); (b)(1) (Unlawful Possession of a Firearm (Prior Conviction)) and 22 D.C. Code §§ 4514(a); (c)(3) (Possession of a Prohibited Weapon), the Defendant faces a maximum sentence of up to 10 years imprisonment for both charges and a mandatory sentence of 1 year for the Unlawful Possession of a Firearm charge pursuant to 22 D.C. Code §§ 4503(a)(1); (b)(1). Here, the evidence is convincing

that the Defendant was carrying a loaded firearm, concealed in his pants. The weapon was readily accessible to the Defendant, and it had a chambered round with an additional 6 rounds in the magazine. Here, there is no indication that the weapon was inert or otherwise inoperable. After his arrest, the Defendant also repeatedly told officers that he didn't have anything on him. He was also attempting to contort his body to actively resist law enforcement, who were attempting to check for weapons. And even after law enforcement recovered the firearm from the Defendant's person, the Defendant remained noncompliant when they asked him questions, such as whether there was a chambered round, to ensure everyone's safety as they removed the weapon.

As a threshold matter, the Court has repeatedly held that possession of a firearm, when loaded or carried in a concealed manner as in this case, poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020). The firearm recovered from had many of these troubling characteristics, and more broadly, the firearm was loaded and ready

to fire when it was recovered. Simply stated, unlawful gun possession is so problematic, especially by someone with the Defendant's criminal history, because of the number of violent gun crimes committed in the District.

Additionally, the firearm recovered from the Defendant's person was a ghost gun. Ghost guns are untraceable firearms without serial numbers that are privately made, assembled by individuals from parts or purchased as Do-It-Yourself kits or that include one unfinished piece, typically the frame or receiver, that requires the purchaser to take steps (such as drilling) to make the gun fully functional. Ghost guns pose a unique risk to the community because their creation and possession circumvents background checks, which would have prevented the Defendant from possessing a firearm as a convicted felon. Indeed, between 2017 and 2023, law enforcement recovered 92,702 untraceable ghost guns, which were obtained without background checks and do lack serial numbers.  Moreover, the number of ghost guns recovered in crimes across the United States surged nearly 1,600% (from 1,629 to 27,490) with almost 1,700 being connected homicides and over 4,000 linked to separate violent crimes.[3] Given the above, the nature and circumstances of this offense weigh heavily in favor of detention.

## II. The Weight of the Evidence Against the Defendant is Strong.

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. Here, the Government's case against the Defendant is strong.

First, the Defendant was lawfully stopped when law enforcement observed signs that he was smoking marijuana in a public space, in violation of D.C. law. This in and of itself is an arrestable offense. During a search incident to arrest, the Defendant had a ghost gun, loaded with

---

3 https://www.justice.gov/archives/opa/pr/justice-department-announces-atfs-publication-final-volume-national-firearms-commerce-and (Last visited June 17, 2025)

ammunition, concealed on his person. The arrest of the Defendant was witnessed by at least half dozen officers on scene, as was the Defendant's attempts to frustrate the officer's check for weapons during the arrest. All of this is captured on the body worn camera of the officers.

The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

"If the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. And so it is in this case, the weight and strength of the evidence increases the prospect that the Defendant will present a danger to the community if released.

### III.  The Defendant's History and Characteristics Merit Detention.

The third factor, the Defendant's history and characteristics weigh heavily in favor of

11

detention. The Defendant's record demonstrates a capacity for committing serious felonies and violating release conditions. The information contained in the Pretrial Services Agency Report is extraordinarily concerning as it demonstrates the Defendant's pattern of possessing firearms in violation of the law. The Defendant's history and characteristics suggest that he will continue to carry loaded firearms into the community.

At the time of the offense, the Defendant was on supervised probation for a serious assault in Superior Court case 2023-FD3-002008. The Defendant was convicted of seriously assaulting the mother of his child by breaking her jaw and choking her to the point of losing consciousness. After the incident, the Defendant fled the scene and returned a week later at the victim's son's daycare. After the Defendant was arrested, law enforcement recovered a loaded firearm on his person. On July 7, 2023, the Defendant was sentenced to 18 months incarceration for the Assault with Significant Bodily Injury count and 180 days incarceration for the Attempted Carrying a Pistol Without a License count.

In February 2024, seven months after the Defendant was sentenced and shortly after he was released from serving his term of incarceration,[4] the court received notice that the Defendant was noncompliant with the conditions of his probation after positive drug tests. Between February and September 2024, the Defendant repeatedly failed to follow his probation conditions even as the court repeatedly gave him opportunities to comply with his conditions. The court docket shows numerous notices for probation violations. Though a probation show cause hearing was discharged in September 2024, the Defendant again was noncompliant with his probation conditions in February 2025. At the time of the instant offense, the Defendant was still on supervised probation.

---

4 According to CSOSA, the Defendant started supervision on December 1, 2023 with a full term expiration date of July 28, 2025.

The Defendant's criminal history shows that he repeatedly possesses firearms unlawfully. The United States would respectfully draw this Court's attention to the Defendant's criminal history as outlined on Page 4 of the Pretrial Services Agency Report. Following the adjudication, the Defendant was convicted of Distribution of Marijuana and was sentenced to 20 days incarceration. He was given the benefit of the Youth Rehabilitation Act. Despite given that benefit, in January 2023, the Defendant was arrested for Carrying a Pistol Without a License. The charge was ultimately not filed but it is worth noting that the Defendant was arrested for the exact criminal behavior as the instant case.

Despite a recent term of incarceration and supervision, the Defendant continues his pattern of criminal behavior. He illegally picked up a firearm in the instant case knowing full well that he should not, given that he had already previously served a sentence and was under supervised probation for engaging in the same conduct.

### IV.     The Defendant Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by the Defendant's release, overwhelmingly weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. The Defendant's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). As noted above, the Defendant has previously engaged in this exact behavior. This alone poses a danger posed to the community.

However, the Defendant's unwillingness to abide by his conditions of probation, as well as his history of serious assaultive behavior provides this Court with an example of how dangerous the Defendant can be to the citizens living within the District.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *Munchel*, 991 F.3d at 1280 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Here the Defendant poses an obvious and articulable threat to the community, as evidenced by his recidivism and his failure to obey court orders. The Defendant's recent criminal contacts show that his criminal activity is unabated and it highlights his flagrant skirting of court admonishments to avoid criminal behavior. Indeed, the Judgment Order in 2023-FD3-002008 specifically ordered the Defendant to obey all laws, ordinances, and regulations. This instant offense demonstrates his inability to do so and as such, he is a danger to the community and should be detained pending trial.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court detain the Defendant pending trial on these charges.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

14

      By:   /s/ Sabena Auyeung  
           SABENA AUYEUNG  
           Assistant United States Attorney  
           IL Bar No: 6317842  
           United States Attorney's Office  
           601 D Street, NW  
           Washington, D.C. 20530  
           Telephone: 202-803-1622  
           Sabena.Auyeung@usdoj.gov