**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | |
| **DEANDRE DAVIS,** | **Case No. 25-cr-170 (ACR)** |
| **Defendant.** | |

**SUPPLEMENTAL BRIEFING IN SUPPORT OF GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPRESS TANGIBLE EVIDENCE**

In advance of argument on whether the firearm recovered from the Defendant, Deandre Davis, should be suppressed, the government submits—at the Court's invitation—supplemental briefing on the following subjects: (1) the types of evidence the Court should consider in making its determination; (2) the impact of a credibility finding on an witness's testimony; (3) and examples of where other Courts have found grounds for suppression without a credibility finding.

I.     **The Court Can Consider Witness Testimony And Physical Evidence When Considering A Suppression Motion.**

At a suppression hearing, the Court can consider all evidence presented, including officer testimony, video, and audio evidence. In this case, the Government offered both testimony and physical evidence: Investigators Harvy Hinostroza and Rony Desir testified and the Court received into evidence body worn camera ("BWC") footage, MPD radio transmissions, Closed Circuit Television ("CCTV"), and police paperwork drafted during the investigation. Courts routinely consider all relevant evidence presented at a suppression hearing, including both testimony and physical evidence, which the Court then uses to evaluate whether the later corroborates the former. *See United States v. Pers.*, 754 F. Supp. 3d 231, 241 (D.D.C. 2024) (crediting testimony corroborated by body-worn camera footage in finding reasonable suspicion); *see also United*

*States v. Gray*, No. CR 20-191 (CKK), 2021 WL 2209462, at *1 (D.D.C. May 31, 2021) ("However, audio from Officer Jones's body-worn camera and his observations recorded in his Gerstein report corroborate his testimony that he saw Gray move from one side of the BMW to the other as the officers approached."); *United States v. Meekins*, No. CR 18-222 (APM), 2019 WL 3802944, at *1 (D.D.C. August 13, 2019) (denying defendant's motion to suppress after considering officer testimony, body-worn camera footage, and other evidence submitted with pleadings).

II.    **The Court Can Consider Prior Credibility Determinations Alongside Corroborating Evidence When Evaluating Testimony.**

In assessing the credibility of testimony at a suppression hearing, the Court applies the same standard it would ask jurors to apply at trial. *See United States v. Best*, 563 F. Supp. 1075, 1079 (D.D.C. 1983) ("In assessing the credibility of Officer Wilson's testimony, the court applies the same kinds of tests as it would ask jurors to apply in their factfinding.") While the Court may consider prior credibility findings by two D.C. Superior Court judges regarding Investigator Hinostroza, it must also independently assess the manner and substance of his testimony in *this* proceeding. At a suppression hearing, it is within the district court's province to determine a witness's credibility, including their demeanor, in deciding whether to accept all, part, or none of that testimony in light of any inconsistences between the testimony itself and any corroborating evidence. *See United States v. Hines*, 140 F.4th 105, 114 (2d Cir. 2025).

The Court must also take into account the limits on extrinsic evidence under Fed.R.Evid. 608(b) when evaluating prior judicial determinations. In *United States v. Dawson*, 434 F.3d 956, 959 (7th Cir. 2006) (J. Posner), the Seventh Circuit Court of Appeals cautioned that although cross-examination on prior judicial determinations may be permissible, courts should exercise discretion in the admission of extrinsic evidence on cross-examination. *Id*. In *Dawson*, Judge Posner adeptly

describes the interplay of Rule 608(b)'s allowance of cross-examination on prior instances that weigh on a witness's character for truthfulness with its exclusion of extrinsic evidence:

> Rule 608(b) begins: "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness ... may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ...." Clearly that would have allowed the judge to permit the defendants' lawyer in this case to ask the witnesses whether they had lied in two previous suppression hearings. And there is nothing to suggest that the "inquiry" could not have extended to asking the witness whether a judge, say, had ever found him not to be a credible witness. After referring to "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness," that may be inquired into on cross-examination, Rule 608(b) adds that such character "may not be proved by extrinsic evidence." There would have been a problem in this case had the defendants' lawyer asked "has any federal judge ever found that you lied on the stand?" and when the witness answered "no" the lawyer sought to have the judge's finding placed in evidence. *That* would be "extrinsic evidence" and would be barred by Rule 608(b) if the evidence were being used to undermine the witness's "character for truthfulness."

*Id*. 958-959 (emphasis in the original). Here, any attempt by the defense to place into the record any extrinsic evidence concerning Investigator Hinostroza's prior credibility findings runs afoul of Rule 608(b)'s prohibition and should not be considered by this Court when ruling on the merits of the Defendant's motion. The government concedes here—as it did during the hearing—that counsel for the Defendant is perfectly entitled to ask *questions* about the prior judicial findings, but counsel is not allowed to introduce evidence concerning them, or any other item that bears on a witness's character for truthfulness. *Id*. ("[T]he decision whether to allow a witness to be cross-examined about a judicial determination finding him not to be credible is confided to the discretion of the trial judge; it is not barred by Rule 608(b), which . . . is a rule about presenting extrinsic evidence, not about asking questions."); *see also* Stephen A. Saltzburg, Impeaching the Witness: Prior Bad Acts and Extrinsic Evidence, 7 Crim. Just. 28, 31 (Winter 1993) ("counsel should not

be permitted to circumvent the no-extrinsic-evidence provision by tucking a third person's opinion about prior acts into a question asked of the witness who has denied the act")

### a. Evidence Presented During The Suppression Hearing Corroborates The Investigator's Testimony.

The evidence corroborates Investigator Hinostroza's testimony of his observations on May 19, 2025. At the suppression hearing, Investigator Hinostroza testified that he observed the Defendant smoking a marijuana cigarette in front of Eddie's Laundromat at the 2100 block of Alabama Avenue SE. July 30, 2025, Hr'g Trans. At 11:7-12:22. He made these observations as he and Investigator Desir were entering the intersection of 22nd Street and Alabama Avenue SE in their police vehicle. *Id*. at 12:23-13:19. This account is corroborated by both the investigator's BWC and the MPD CCTV footage. The BWC footage shows the investigators entering the intersection of 22nd Street and Alabama Avenue SE on BWC, while simultaneously, the CCTV depicts the Defendant smoking and making a passing gesture to an individual wearing a white shirt. Gov. Ex. 3 at 19:33:45; Gov. Ex. 4 at 07:33:36:00-38:14.

In addition, the Government produced a contemporaneous radio broadcast reporting a "black hoodie smoking, white hoodie smoking" which occurred seconds after Investigator Hinostroza's observation of the Defendant. Gov't Ex. 2 at 7:23-:26. Based on the investigators' testimony regarding the distance between the intersection, the unobstructed view of the Defendant from their moving squad car which was closing the gap between their vehicle and the Defendant, as well as the video and audio evidence corroborating their testimony, this Court should credit Investigator Hinostroza's testimony. See *United States v. Dolberry*, No. CR 15-0037 (BAH), 2015 WL 4751023, at *5–6 (D.D.C. Aug. 11, 2015) (where the Court found that evidence corroborated officer testimony. "In other words, the empirical evidence in this case, in the form of the dispatch recording, corroborates rather than contradicts, Officer Wright's testimony.")

Courts give deference to the testimony of witnesses unless it is "exceedingly improbable testimony." *United States v. Delaney*, 651 F.3d 15, 18 (D.C. Cir. 2011). Such improbable testimony may be established when "empirical evidence contradicts the testimony heard by the court," or when "there is such clear contradiction between the witnesses as would demonstrate clear error to credit either or both witnesses' testimony." *Id*. at 19. In cases "where an officer's credibility is so impugned as to require exclusion of his testimony," the D.C. Circuit has noted that "the problems with the officer's account are numerous and bear directly on the contested issue." *Id*.

The video and audio evidence presented at the hearing corroborated, rather than contradicted, Investigator Hinostroza's testimony. And, the Court here can rely on both Investigator Hinostroza's testimony *and* the testimony of Investigator Desir, who has no adverse credibility findings and who routinely testifies in court. When viewed in totality, the government presented video, audio, physical evidence, and a second witness's testimony that all corroborates Investigator Hinostroza's account of the events on May 19, 2025.

### b. The Court should not accord much weight to complaints made against Investigator Hinostroza and Investigator Desir.

Fed. R. Evid. 608(b) states, in relevant part that, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the" witness's character for truthfulness. *See also* Fed. R. Evid. 608(b) advisory note to the 2003 Amendments (citing *United States v. Abel*, 469 U.S. 45 (1984); United *States v. Fusco*, 748 F.2d 996 (5th Cir. 1984) (Rule 608(b) limits the use of evidence "designed to show that the witness has done things, unrelated to the suit being tried, that make him more or less believable per se."); Stephen A. Saltzburg, *Impeaching the Witness: Prior Bad Acts and Extrinsic*

*Evidence*, 7 Crim. Just. 28, 31 (Winter 1993) ("counsel should not be permitted to circumvent the no-extrinsic-evidence provision by tucking a third person's opinion about prior acts into a question asked of the witness who has denied the act")). Rule 608(b) enacts a clear rule that bars extrinsic evidence to prove specific prior instances of conduct that weigh on that witness's character for truthfulness. This means that all the *extrinsic evidence*—but not testimony—sponsored by the defense at the hearing is excluded from the Court's consideration when weighing the witnesses credibility.

While the D.C. Circuit has repeatedly held that "bias is always a relevant subject for cross-examination," *United States v. Lin*, 101 F.3d 760, 768 (D.C.Cir.1996), evidence that may be probative of bias may be excluded on Fed. R. Evid. 403 grounds. *United States v. McCallum*, 885 F. Supp. 2d 105, 116–19 (D.D.C. 2012), aff'd, 721 F.3d 706 (D.C. Cir. 2013). In *McCallum*, the court further engaged in a detailed analysis of the types of evidence that should be considered and cautioned against the admission of evidence that brought a high risk of potential prejudice. *Id.*; *see also United States v. Wilson*, 605 F.3d 985 (D.C.Cir.2010) ("Even assuming information about the subject matter of the investigation was probative of bias, the district court would properly have excluded cross-examination pursuant to Rule 403 because 'its probative value [wa]s substantially outweighed by the danger of unfair prejudice.'") As it relates to police complaints, the court in *MacCallum* noted that "the mere filing of a complaint [against a witness] is not probative of truthfulness or untruthfulness." *Id.* at 119 (quoting *United States v. Morrison*, 98 F.3d 619, 628 (D.C.Cir.1996) (emphasis in original) (finding no abuse of discretion where trial court sustained an objection to a cross-examination question put to a government witness asking if someone had earlier filed a court complaint against her)).

Regarding complaints against officers, the Seventh and Eleventh Circuits have reasoned that the key factor in determining whether cross-examination regarding complaints was proper is its bearing on truthfulness. *See United States v. Holt*, 486 F.3d 997, 1000–02 (7th Cir.2007) (upholding district court's exclusion of evidence of police complaints because it was not relevant and did not bear on the witnesses' characters for truthfulness); *see also United States v. Taylor*, 417 F.3d 1176, 1178–81 (11th Cir.2005) (upholding district court's exclusion of cross-examination concerning an officer's prior complaint history under Rule 608(b)). In *Holt*, the Seventh Circuit affirmed the trial court's decision to exclude questioning regarding the complaints because the evidence of police complaints was not relevant, and did not bear on the officers' characters for truthfulness. *Id*. The Seventh Circuit further upheld the district court's exclusion of questions about complaints, investigations, or discipline, and that no extrinsic evidence could be introduced by the defense, but allowed cross-examination on the underlying conduct that led to the officers' discipline. *Id*. at 1001. In upholding the district court's exclusion of certain topics for cross-examination, the Seventh Circuit pointed out that, "[t]he trial judge has a responsibility not to allow cross-examination to get out of hand… and prolong the trial unnecessarily. . . ." *Id*.

Defense counsel conflates the existence of police complaints with witness credibility.[1] At the suppression hearing, Investigator Desir testified that as an investigator, he works with civilians daily and not all of the interactions are positive. Aug. 5, 2025, Hr'g Trans. At 63:24-64:4. Investigator Desir further testified that as such, he does not know of any officer who is without police complaints. Aug. 5, 2025, Hr'g Trans. At 63:21-23. Moreover, some of the complaints on Investigators Hinostroza and Desir's file relates to technical violations, such as not turning on a

---

[1] Please refer to the Government's Supplemental Briefing to Preclude Cross-Examination Regarding Police Personnel Files for additional argument.

body worn camera timely or vehicular accidents. If the existence of police complaints tested the credibility of a law enforcement witnesses as significantly as defense counsel suggests, then the credibility of law enforcement would be presumed, and the courts could not independently assess witness credibility. Again, "it is the province of the district court at a suppression hearing to assess a witness's credibility, including his or her demeanor, in determining whether to accept all, some, or none of that testimony in light of any inconsistencies in the witness's recitation of the facts." *United Hines*, 140 F.4th at 114 (2d Cir. 2025)

Evidence of prior police complaints should also be limited pursuant to Fed.R.Evid. 608(b). Here, defense counsel was given the opportunity at the hearing to cross examine both investigators on their disciplinary history. As it relates to Investigator Hinostroza, the Court gave wide latitude for defense counsel to cross on the previous credibility determinations made by two Superior Court judges. While the defense should be provided the opportunity to cross examination Investigator Hinostroza on his previous credibility determinations, see *United States v. Whitmore*, 359 F.3d 609, 614 (D.C.Cir.2004) (concluding that a defendant should have been allowed to cross-examine a police officer witness about a D.C. Superior Court judge's finding that [the officer] had lied in an unrelated criminal trial), cross examination is still limited under Fed. R. Evid. 608(b). In other words, instances of past conduct cannot be proven by extrinsic evidence when introduced to attack a witness's character for truthfulness. *See Wilson*, 605 F.3d at 1014 (D.C. Cir. 2010) ("[S]pecific instances of untruthfulness are not provable by extrinsic evidence under Rule 608(b).").

### III. <u>The Investigators Did Not Violate The Fourth Amendment And Witness Credibility Is But One Piece Of Evidence For The Court To Consider When Deciding On Suppression.</u>

The issue before this Court is whether the loaded firearm found on the Defendant should be suppressed. This Court must analyze whether Investigators Hinostroza and Desir had probable

cause to effectuate a search incident to the arrest of the Defendant. If the Court does not find that there was probable cause to arrest Mr. Davis, then it must consider whether the investigators had reasonable articulable suspicion to stop and search the Defendant. Here, the Government contends the investigators' search of the Defendant was within the strictures of the Fourth Amendment.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV.  However, a law enforcement officer may conduct a brief investigative "*Terry* stop" consistent with the Fourth Amendment if the officer has "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). However, not every encounter between a police officer and a private person constitutes a seizure within the meaning of the Fourth Amendment. A Fourth Amendment seizure occurs only "when physical force is used to restrain movement or when a person submits to an officer's 'show of authority.'" *United States v. Brodie*, 742 F.3d 1058, 1061 (D.C. Cir. 2014) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). Officers make a "show of authority" when, under the totality of the circumstances, a "reasonable person" would not believe that they are "free to leave" the encounter. *United States v. Castle*, 825 F.3d 625, 632 (D.C. Cir. 2016); see also *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). A suspect may submit to a show of authority by complying with an officer's instructions, including the implicit instruction to stop walking away. See *United States v. Veney*, 45 F.4th 403, 406 (D.C. Cir. 2022). That submission must be "genuine," though it may be brief. *United States v. Mabry*, 997 F.3d 1239, 1246 (D.C. Cir. 2021); see also *Brodie*, 742 F.3d at 1061 ("Later acts of noncompliance do not negate a defendant's initial submission."). (*United States v. Woodruff*, No. CR 22-219, slip opinion at 5 (D.D.C. March 24, 2023) (J. Cobb).

The Court must evaluate the totality of the circumstances of the encounter, consider only the facts available to the officers at the time of the seizure, and assess those facts using an "objective framework." *Id*. at 635. In making that determination, "due weight must be given, not to an officer's inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." Id. at 632 (emphasis in original). (*Id.* 5-6)

### a. *This court need not discredit witness testimony to find the government failed to meet its burden at suppression.*

The Court made multiple references to its need to make credibility findings as to Investigators Hinostroza and Desir in order to reach a decision on defendant Davis's motion to suppress the evidence discovered in this case. However, the Court need not make specific credibility findings to reach a decision on the merits of the defendant's motion. Indeed, many judges in this Court have reached a decision on the merits either by finding a witness credible but still granting a motion to suppress, or by simply not making any determination as to witness credibility at all. *See United States v. Woodruff*, No. CR 22-219, slip opinion at 8-9 (D.D.C. March 24, 2023) (J. Cobb) (finding that the government did not meet its burden to overcome a motion to suppress without reaching a credibility determination of the officers); *see also United States v. Gray*, No. CR 20-191, 2021 WL 2209462, at *5-6 (D.D.C. May 31, 2021) (J. Kollar-Kotelly) (quoting *United States v. Goodman*, No. CV 19-297 (KBJ) (D.D.C.) (May 19, 2021 Minute Order) ("The Court did not intend to make a 'specific adverse credibility determination finding that Officer was untruthful under oath' with respect to his testimony. . . . Instead, as the Government suggests, the Court merely determined that 'the evidence based on [Officer Bewley's testimony] was not sufficiently supported to sustain the government's burden."); *United States v. Jones*, No.

CR 23-154, 2024 WL 2269428 at *1 (D.D.C. May 20, 2024) (J. Chutkan); *United States v. Williams*, No CR 23-440, 2024 WL 4647643 at *1 (D.D.C. October 31, 2024) (J. Kollar-Kotelly).

Here, the government contends—and further expounds below—that not only did the government meet its burden to overcome defendant Davis's motion, but that the witnesses in this case testified truthfully. However, if the Court finds that the government has not met its burden to show that the investigators here had legal cause for a warrantless search of defendant Davis, the Court may suppress the evidence without any adverse credibility findings as to the government's witnesses. *See Woodruff*, slip at 8-9.

### b. Evidence supports probable cause to arrest.

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Chimel v. California*, 395 U.S. 752, 762-63 (1969). To make an arrest, an officer must have probable cause that the defendant committed an arrestable offense. *United States v. Freeman*, 360 F. Supp. 2d 43, 47-48 (D.D.C. 2003). "[P]robable cause does not require an absolute certainty, 'only a probability or substantial chance' that a crime was committed." *Id*. (citing *Illinois v. Gates*, 462 U.S. 213, 243-44 n. 13 (1983). Indeed, "[a]n officer may arrest an individual without violating the Fourth Amendment if there is probable cause to believe that the offender has committed even a *very minor* criminal offense in the officer's presence." *Atwater v. City of Lago Vista*, 532 U.S. 318, 322 (2001) (emphasis added). To determine whether an officer had probable cause for an arrest, "[courts] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U. S. 366, 371 (2003) (internal quotations omitted); *cf Smith v. United States*, 121 F. Supp. 3d 112, 120 (D.D.C. 2015) (J. Brown-Jackson) ("the test for determining whether or not the police had sufficient information and a reasonable

belief that the suspect had committed a crime is dependent entirely on the facts as they actually occurred—*i.e.,* on the objective facts—without regard to what a police officer may have actually, even reasonably, perceived the facts to be.") (cleaned up).

Here, the undisputed evidence—captured on video—is that Mr. Davis and his compatriots were smoking. Indeed, the video shows Mr. Davis taking two pulls on the marijuana cigarette in his hand before handing it off to the individual in white, who then hand sit to the individual in black. Gov. Ex. 4 at 07:33:35:12-44:05. At the hearing, Investigator Hinostroza testimony matched *exactly* with how the events played out in the video. July 30, 2025, Hr'g Trans. 13:11-16. RSU also recovered illicit narcotics and smoking paraphernalia upon the arrest and search of those individuals, including a small amount of a synthetic cannabinoid and a rolling paper lined with THC wax. Combined with the odor of freshly burnt marijuana described by the investigators (July 30, 2025 Hr'g Trans. 21-3-12), Mr. Davis's unprompted and self-serving denial that he smoked anything (*Id*. 21:20-22-5; Gov. Ex. 3 at 19:34:13-19), the investigators' real-time statements detailing what they saw (*Id*. 20:3-11; Gov. Ex. 2, at 7:23-:25), and the efforts to search for the discarded marijuana cigarette, the Court has more than enough evidence to find that the "objective facts" here demonstrate that Mr. Davis was smoking marijuana in public.

These types of observations have repeatedly been recognized as sufficient to support probable cause for arrest. *See, e.g. Bulter v. United States*, 102 A.2d 736, 741-72 (D.C. 2016) (officer had probable cause to arrest the defendant for unlawfully possessing marijuana where officer smelled "fresh" marijuana emanating from the vehicle the defendant occupied alone during a traffic stop); *United States v. Walters*, 361 Fed. Appx. 153, 154 (D.C. Cir. 2009) (holding that officers had probable cause to believe that the defendant unlawfully possessed marijuana upon finding marijuana and a lighter in appellant's jacket during a lawful traffic stop); *cf. United States v. Sheffield*, 832 F.3d 296, 305 (D.C. Cir. 2016) (the smell of marijuana, in conjunction with other

evidence of drug use, provided probable cause to believe the vehicle contained drug contraband, which in turn supported a search of the car's compartments); *United States v. Turner*, 119 F.3d 18, 20 (D.C. Cir. 1997) (finding probable cause to search vehicle when there was the "smell of burnt marijuana emanating from the car, the pieces of torn cigar paper arrayed around [the defendant], and the zip lock bag of green weed material found on the floor behind his seat.").

### c. *Evidence supports reasonable articulable suspicion.*

To determine whether a challenged stop was unconstitutional, the Court's "first task is to pinpoint the time of the stop." *United States v. Delaney*, 955 F.3d 1077, 1082 (D.C. Cir. 2020). "A Fourth Amendment seizure occurs when physical force is used to restrain movement or when a person submits to an officer's show of authority." *Id.* at 1081 (internal quotation and citations omitted). Where physical force is not used, the Court must consider whether, "in view of all the circumstances surrounding the incident," "a reasonable person would have believed that he was not free to leave." *California v. Hodari D.*, 499 U.S. 621, 627–28, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). This standard "is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Id.* "In making that determination, courts consider the totality of the circumstances, including 'whether the suspect was physically intimidated or touched, whether the officer displayed a weapon, wore a uniform, or restricted the defendant's movements, the time and place of the encounter, and whether the officer's use of language or tone of voice indicated that compliance with the officer's request might be compelled.' " *Delaney*, 955 F.3d at 1081 (quoting *United States v. Castle*, 825 F.3d 625, 632–33 (D.C. Cir. 2016)). The defendant bears the burden of proving that the acts at issue constitute a seizure. *Id.*

Investigators Hinostroza and Desir observed Mr. Davis smoking what appeared to be a

marijuana cigarette. Specifically, they observed distinct, thick, white smoke emanating from the item that the individuals, including Mr. Davis, were smoking. When investigators exited their vehicle, they detected an odor consistent with burnt marijuana.

Further supporting their suspicion of Mr. Davis, upon seeing law enforcement, he tried to immediately separate himself from the group and headed for the only avenue of escape available to him. These observations provided the investigators with sufficient grounds to conduct a brief investigatory stop of Mr. Davis. Once Investigator Hinostroza began speaking to Mr. Davis, he noticed Mr. Davis acting nervously, volunteering information not asked for (i.e., "I wasn't smoking"), backing away from Investigator Hinostroza, blading his body, looking off to the side while trying to delay finding his identification, and finally, reaching into his pocket after he already told Investigator Hinostroza he did not have his identification on him. Investigator Hinostroza then grabbed Mr. Davis's arm, at which point Mr. Davis became uncooperative and tried to break free from his grip. *See United States v. Taylor*, 743 F. Supp. 3d 168, 175-76 (D.D.C. 2024) (J. Moss) (finding officer's testimony of "blading" and "standing unnaturally" to contribute to reasonable suspicion).

Mr. Davis's "response in seeing the officers approach him only added to the officers' reasonable suspicion." *United States v. Butler*, No. 20 CR 630 2021 WL 5881680 at *3 (N.D. Ill. Dec. 13, 2021). Unlike the other two individuals, Mr. Davis immediately started walking away when he saw law enforcement approach and exit their vehicle. While Mr. Davis's conduct may not be "necessarily indicative of wrongdoing" on its own, "it is certainly suggestive of such." *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("nervous, evasive behavior" supports reasonable suspicion of criminal activity); *United States v. Brown*, 334 F.3d 1161, 1167–68 (D.C. Cir. 2003) (well-settled that furtive movements may be grounds for reasonable suspicion); *United States v.*

*Belin*, 868 F.3d 43, 51 (1st Cir. 2017) (change in demeanor indicating nervousness contributed to reasonable suspicion that defendant was armed and dangerous) (citing *United States v. Arnott*, 758 F.3d 40, 15 45 (1st Cir. 2014) (nervousness relevant to reasonable suspicion that defendant was armed and dangerous)).

At this point, Investigator Hinostroza testified that he became concerned because Mr. Davis did not have a valid reason for reaching into his pocket and tried to break free from his grip. July 30, 2025 Hr'g Trans. at 23:1-24:3. This, combined with his training and experience with individuals armed with illegal weapons, made him believe Mr. Davis was armed. *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) ("[A]n officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous. . . the officer may conduct a pat down search to determine whether the person is in fact carrying a weapon.") (internal quotations omitted). Due to that reasonable belief, Investigator Hinostroza and the members of the RSU had a justification under *Terry* and its progeny to conduct a brief protective pat down. During that pat down, Investigator Desir immediately felt a hard, L-shaped object near Mr. Davis's groin and gave the code word the RSU used for the discovery of a firearm. They also recovered controlled substances and drug paraphernalia from the other individuals with Mr. Davis.

## CONCLUSION

The Court should deny Mr. Davis's motion to suppress the firearm found on his person because Investigators Hinostroza and Desir personally witnessed Mr. Davis, and two other individuals smoke a marijuana cigarette on May 19, 2025. They witnessed Mr. Davis take a hit and expel a distinct white cloud of smoke before passing the marijuana cigarette onto the other individuals. When they stopped to investigate, they smelled freshly burnt marijuana. Based on these facts *alone* they had probable cause to arrest Mr. Davis and conduct a search incident to that

arrest. The Court should credit the investigators presumed testimony because Mr. Davis was captured on video smoking and passing the object around to the other two individuals, who were both found with smoking paraphernalia when they were searched. Even if the Court does not find that the investigators had probable cause for an arrest, the government has also met the burden to show they had reasonable articulable suspicion to conduct a *Terry* stop and subsequent protective pat down to search for weapons. Accordingly, this Court should deny the defendant's motion.

                                     Respectfully submitted,

                                     Jeanine Ferris Pirro
                                     United States Attorney

By:     */s/ Kyle M. McWaters*
                                     Kyle M. McWaters
                                     D.C. Bar No. 241625
                                     Sabena Auyeung
                                     IL Bar No: 6317842
                                     Assistant United States Attorneys
                                     601 D Street NW
                                     Washington, DC 20530
                                     (202) 252-6983
                                     kyle.mcwaters@usdoj.gov
                                     202-803-1622
                                     Sabena.Auyeung@usdoj.gov

16