# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**DEANDRE DAVIS,**<br><br>Defendant. | Criminal No. 25-CR-170 (ACR) |

## GOVERNMENT'S MOTION TO QUASH SUBPOENA

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court for an order quashing the subpoena *duces tecum* issued by defendant Deandre Davis to the General Counsel for the Metropolitan Police Department, Teresa Quon, (herein referred to as "MPD") on August 13, 2025. As grounds for this motion, the United States relies on the following points and authorities:

## FACTUAL BACKGROUND

On August 13, 2025, defendant Davis served a subpoena on the MPD Custodian of Records, attached as Exhibit 1, seeking:

- All email communications related to MPD Officer Rony Desir and MPD Officer Harvey Hinostroza between May15, 2025, to June 15, 2025, related to the following:

    1. "OPC"
    2. "Office of Police Complaints"
    3. "Harassment"
    4. "Merit Determination" or "Merits Determination"

This request came even though the United States Attorney's Office for the District of Columbia ("USAO") provided six separate discovery productions, including multiple productions that contained potential Jencks and/or *Giglio* information on June 18, 2025, June 25, 2025, June 30, 2025, July 22, 2025, July 28, 2025, and August 3, 2025. That discovery included body worn

1

camera files, Closed Circuit Television Video (CCTV), document discovery, PPMS for the government's witnesses at the July 30, 2025 suppression hearing, and documents underlying some of the entries on the witness's CADRPTS, which represented the total discoverable files immediately available to the USAO.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 17 governs the issuance of subpoenas in criminal cases. Under its subsection (c), the court "may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial." *United States v. Nixon*, 418 U.S. 683, 698, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (quoting Fed. R. Crim. P. 17(c)). That subsection was "not intended to provide a means of discovery for criminal cases," but rather "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Id.* at 698–99, 94 S.Ct. 3090 (citations omitted). Accordingly, Rule 17(c) subpoenas are not appropriate where the moving party seeks materials "procurable reasonably in advance of trial by exercise of due diligence," or operate "as a general 'fishing expedition.'" *Id.* at 699–700, 94 S.Ct. 3090. "Courts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16." *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980).

A pre-trial Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon*, 418 U.S. at 700, 94 S.Ct. 3090. "The first prong of this test— relevance—requires the Court to assess whether the documents sought have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Libby*, 432 F. Supp. 2d

2

26, 31 (D.D.C. 2006) (quoting Fed. R. Evid. 401). "If the documents are deemed relevant, the Court must then determine whether they would be admissible. This inquiry is largely governed by the Federal Rules of Evidence." *Id.* (citing Fed. R. Evid. 401–415, 801–807). Finally, the request must specify the records sought: While it may sometimes be impossible to "describe fully" the materials being sought, "courts will not approve a subpoena for documents based upon requests for disclosure from broad categories of documents." *Id.* (citing *Nixon*, 418 U.S. at 700, 94 S.Ct. 3090; *United States v. North*, 708 F. Supp. 402, 404 (D.D.C. 1989)). "The burden of showing these standards" are met falls "on the party requesting the information." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 386, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (citing *Nixon*, 418 U.S. at 699, 94 S.Ct. 3090).

The Court has the power under Rule 17(c)(2) to quash a subpoena *duces tecum* if it is "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). *See also Nixon*, 418 U.S. at 699-700 ("[I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith ad is not intended as a general 'fishing expedition.'").

## ARGUMENT

As an initial matter, it appears that the subpoena was improperly served on MPD. A subpoena under Rule 17 must be served by "[a] marshal, a deputy marshal, or any nonparty who is at least 18 years old. . .The server must deliver a copy of the subpoena to the witness." *See also* Fed. R. Crim. P. 49; Fed. R. Civ. P. 5. Courts in this district routinely hold that a subpoena must

3

be properly served, unless improper service is waived. *See Henderson v. Day*, No. 19-945 (RDM), 2021 WL 1978793 (D.D.C. May 17, 2021) ("[J]udges in this district have consistently required personal service, *see, e.g.*, *Call of the Wild Movie, LLC v. Does 1-1,1062*, 770 F. Supp. 2d 332, 361-62 (D.D.C. 2011) (requiring personal service even though the subpoenaed party acknowledged it received the emailed subpoena); *U.S. v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 36-37 (D.D.C. 2004) (holding that leaving subpoenas in a mail room or with support staff failed the personal service requirement of Federal Rule of Civil Procedure 45); *Alexander v. F.B.I.*, 186 F.R.D. 128, 130 (D.D.C. 1998) (holding that a subpoena must be personally served, although objections to improper service may be waived)."). MPD has not consented to email service, and this was served via email by Assistant Federal Public Defender Eugene Ohm, counsel of record for defendant Davis—in other words, *not* a "nonparty." As such, the service of this subpoena was improper, and this Court should quash the subpoena as transmitted.

Substantively, the defendant cannot show that the documents requested in the subpoena (attached as Exhibit A) are relevant, admissible, or will help him prepare for trial and the Court should grant the government's motion to quash. Defendant Davis requests "[a]ll email communications related to MPD Officer Rony Desir and MPD Officer Harvey Hinostroza," related to four broad categories unconstrained by case, relevance, or any other parameters save for a month-long date range. Because this subpoena requests irrelevant and inadmissible evidence, it should be quashed.

First, the requested documents have no apparent baring on the case at bar. Whether there are email communications related to "OPC, Office of Police Complaints, Harassment, Merit Determination or Merits Determination," has no tendency to make a fact of consequence in determining defendant Davis's guilt or innocence more or less probable. *See* Fed. R. Evid. 401.

4

Nor would it have any bearing on the open suppression hearing currently before the Court to determine whether to grant defendant Davis's motion to suppress the evidence seized in this case by MPD investigators. Courts have quashed subpoenas based on a defendant's mere expectation about what could be recovered without a showing of sufficient likelihood that the documents requested actually contain relevant evidence. *See United States v. Fitzsimons*, 342 F.R.D. 18, 21 (D.D.C. 2022) (J. Contreras); *see also United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) ("Neither the government nor the defendants have explained how the CBS materials could be admissible as evidence, unless the interviewees testified and made inconsistent statements."); *United States v. Libby*, 432 F. Supp. 2d 26, 34–35 (D.D.C. 2006) (quashing a request for a reporter's phone records and calendar entries where "[i]n essence, the defendant is simply seeking to examine general categories of documents with the hope that they contain information that may be helpful to his defense ....This is not the proper role Rule 17(c) subpoenas are intended to play in the criminal arena"); *United States v. Nektalov*, No. S203-cr-828, 2004 WL 1574721, at *3 (S.D.N.Y. July 14, 2004) ("Defendant's anticipation that a comparison of all of Delgado's and Del Star's records to the apparent absence of records relating to defendant might advance his case does not demonstrate to the Court that the sought after documents are relevant and properly subject to a Rule 17(c) subpoena.").

Indeed, the *Fitzsimons* case is particularly illustrative here as the Court denied a defense request for documents on similar grounds—namely, the mere prospect of obtaining impeachment information. There, Judge Contreras quashed the defendant's subpoena because the "relevance prong is not satisfied merely because a defendant can articulate what they hope to find in the subpoenaed evidence." *Fitzsimons*, 342 at 21. Similarly, here, the only rationale the government can conjure for the defense's request is a desire to impeach Investigators Hinostroza

and Desir with the materials they hope to obtain. However, this justification fails to meet their burden. The items requested by the defense would not operate as impeachment material as to their testimony about what they saw *in this case*, but rather would be a way for defense to backdoor their way into a mini-trial—more on this later—on prior alleged misconduct reports that have been or are being investigated by an independent body and would have no baring on impeachment of the investigators' testimony here. As the government noted multiple times during the suppression hearing, it has already complied with its discovery obligations under both Rule 16 and *Brady* and its progeny by turning over PPMS lists and related underlying documents. Finally, as the case law makes clear, Rule 17 was not designed as a discovery tool, but rather a vehicle for a "good faith effort to obtain identified evidence." *Id* at 20 (internal quotations and citations omitted).

Second, even if defendant Davis could clear the relevance prong, he cannot hurdle the admissibility factor. As more fully discussed in the government's Supplemental Briefing to Preclude Cross-Examination Regarding Police Personnel Files, *see* ECF No. 42, the underlying documents requested would not be admissible at the suppression hearing and, certainly, would not be admissible at trial. Fed. R. 608(b) works to prevent exactly this kind of side-show trial. Beyond the strictures of Rule 608(b), the defendant has the burden to show with "reasonable probability that the documents he seeks are relevant and admissible." *Fitzsimons*, 342 at 2. Let's say defendant Davis could get past Rule 608(b), he would then have to show reasonable probability that the documents he seeks would reveal statements that were inconsistent with the investigators testimony *already given* to the Court during the suppression hearing on *direct examination*. Defendant Davis would not be able to accomplish because the government did not elicit testimony regarding any OPC investigations on direct examination and, therefore, the defense has nothing to impeach them on. Instead, this subpoena is a clear "fishing expedition" for the defense as they

6

want to continue to needlessly and without good faith probe into the disciplinary history of the investigators the government called during the suppression hearing. "[I]f the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *Libby*, 432 F. Supp. 2d at 31 (quoting *United States v. Noriega,* 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)).

## CONCLUSION

This Court should quash defendant Davis's subpoena requesting certain communications and documents from MPD because it was improperly served, the evidence requested is irrelevant and inadmissible, and this subpoena resembles less "a good faith effort to obtain identified evidence than [it does] a general 'fishing expedition' that attempts to use the Rule 17(c) subpoena as a discovery device." *United States v. Trump*, 703 F. Supp. 3d 89, 94 (D.D.C. 2023) (J. Chutkan) (cleaned up). Accordingly, the government requests this Court QUASH the defendant's subpoena.

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney

By: */s/ Kyle M. McWaters*
Kyle M. McWaters
D.C. Bar No. 241625
Sabena Auyeung
IL Bar No: 6317842
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
(202) 252-6983
kyle.mcwaters@usdoj.gov
202-803-1622
Sabena.Auyeung@usdoj.gov