UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | :     25-CR-170-ACR |
| DEANDRE DAVIS | : |

## RESPONSE TO GOVERNMENT MOTION

Mr. Deandre Davis, through undersigned counsel, files this response to the government's supplemental briefing. In its briefing, the government asks this Court to preclude the defense from cross-examining two MPD officers about information contained in their personnel files. The government's request is overbroad and violates Mr. Davis's right to confront the witnesses at issue. Because the Court is permitted to consider the testimony elicited on cross-examination about the officers' misconduct, the Court should allow Mr. Davis's questioning on the issues and deny the government's request.

## BACKGROUND

On May 19, 2025, Robbery Crime Suppression Team officers were driving in an unmarked police car when they drove past a laundromat. In front of the laundromat were several individuals both seated and standing. According to the *Gerstein* affidavit, officers "observed Mr. Davis actively smoking a white 'LIT' hand roll cigarette containing green weed like substance, to which a white cloud of smoke was emanating from Mr. Davis mouth to the air." The officers then allege that Mr. Davis "handed the same white 'LIT' hand roll cigarette containing green weed like substance to Mr. Washington." Based on these alleged observations, which the officers believed amounted to probable cause, stopped, detained, and placed Mr. Davis and two other men under arrest for public consumption of marijuana.

1

During a search incident to arrest, the officers found a black semi-automatic firearm on Mr. Davis. The discovery of that firearm—or more specifically it's ammunition—is what brings Mr. Davis before this court on one count of unlawful possession of ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

On July 30, August 4 and August 5, 2025, the parties appeared for a hearing on Mr. Davis's motion to suppress. During the hearing on August 4, counsel for Mr. Davis sought to impeach the credibility of Officer Hinostroza by questioning him about complaints within his personnel file. The government objected, arguing that allowing counsel to cross-examine its witnesses about previous misconduct would be improper. Mr. Davis also sought to impeach Officer Desir with respect to complaints in his personnel file. This Court requested further briefing from the parties, including on the question of whether the Court may consider the officers' persistent violations of individuals' rights when deciding Mr. Davis's motion.

## ARGUMENT

**I.     Inquiry into the officers' misconduct is relevant and should be permitted**

The government argues that the disciplinary issues in Officers Desir and Hinostroza's personnel files are not relevant to bias, credibility, or any other matter in this case. But that misunderstands the standard for the admissibility of evidence. The government is incorrect.

"Evidence is relevant and therefore admissible if it has any tendency to make a fact of consequence more or less likely." *United States v. Beltran-Garcia*, 338 Fed. Appx. 765, 771 (10th Cir. 2009) (citing Fed. R. Evid. 401–02). An "officer's character for truthfulness is clearly consequential because his testimony in addition to the alleged . . . circumstances of the arrest led to the defendants' convictions." *Id.* This is true to a greater degree where, as here, a court must determine whether an officer's version of events occurred and that determination goes to the heart

of a legal conclusion.

Moreover, impeachment evidence, like exculpatory evidence "falls within the *Brady* [*v. Maryland*, 373 U.S. 83, 87 (1963)] rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985). In making that declaration, the Supreme Court, reasoned that impeachment evidence "is 'evidence favorable to an accused,' so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *Id.* (quoting *Brady*, 373 U.S. at 87). *Cf. Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.").

So while, as the government argues, PPMS reports might routinely contain much material that is not impeachment for purposes of *Brady* or *Giglio v. United States*, 405 U.S. 150 (1972), much of the material is, in fact, relevant and admissible for that purpose. *United States v. Olguin*, 610 Fed. Appx. 795, 797 (10th Cir. 2015) ("[I]nformation about a law enforcement officer being disciplined due to dishonesty is certainly probative of truthfulness." (quotation marks omitted)). *See also United States v. Banks*, 2025 WL 642246, *4 (D. Me. Feb. 27, 2025). The misconduct complaints against Officers Hinostroza and Desir are therefore relevant, can properly be a focus of cross-examination.

## II.     The Federal Rules of Evidence do not apply at this stage

"[T]he rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence." *United States v. Matlock*, 415 U.S. 164, 172–73 (1974).  As such, the "rules applicable to proceedings to determine probable cause for arrest and search and those governing the criminal trial itself" are distinguishable because of the "large difference between the two thigs to be proved, as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to

3

establish them." *Id.* at 173 (citing *Brinegar v. United States*, 383 U.S. 160, 173 (1949)). Therefore, "[t]hat certain evidence was admitted in preliminary proceedings but excluded at trial—and the Court thought both rulings proper—was thought merely to 'illustrate the difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt.'" *Id.* (quoting *Brinegar*, 383 U.S. at 174). This Court should therefore not consider itself bound by the rules of evidence in these proceedings on Mr. Davis's motion. Instead, the Court should practice its broad discretion and allow Mr. Davis to cross-examine the government's witnesses regarding the violations in their personnel files. *See Hardy v. United States*, 335 F.2d 288, 289 (D.C. Cir. 1964) (finding error where trial court disallowed defense attempt to impeach officer statements at trial and stating that "[o]rdinarily a ruling on the relevancy of evidence depends upon the exercise of the sound discretion of the trial judge and will not be disturbed upon appeal except for grave abuse.")

Nor should the Court consider, as the government suggests, any potential impact on a trial jury. *See United States v. Ienco*, 92 F.3d 564, 568 (7th Cir. 1996) ("[W]hen, as in a suppression hearing, a jury is not involved, there is no reason for the judge to become preoccupied with the niceties of the rules of evidence."). There is no jury to confuse or mislead at this stage, and should this case proceed to trial, the Court will have occasion to determine whether inquiry into the officers' past misconduct will create issues that cannot be overcome with a limiting instruction.

Even were this Court to conclude that the Rules apply at the evidentiary hearings on Mr. Davis's motion to suppress, Federal Rule of Evidence 608 only prohibits the use of extrinsic evidence. In fact, the Rule permits cross-examination of specific instances of conduct "if they are probative of the character for truthfulness or untruthfulness of" the witness. Fed. R. Evid. 608. Thus, questioning about prior adverse credibility findings, for example, is permitted a permitted

4

form of impeachment under the Rules. *United States v. Dawson*, 425 F.3d 389, 395 (7th Cir. 2005) (finding error where "defendants were not proposing to use extrinsic evidence . . . but merely to ask each witness whether a judge had disbelieved him or her in a previous case").

### III. Disallowing cross-examination violates Mr. Davis's rights to confront the witnesses against him

Perhaps most important, however, to proceedings regarding Mr. Davis's motion to suppress is his Sixth Amendment right to confront witnesses against him. "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). *See United States v. Wilson*, 605 F.3d 985, 1003 (D.C. Cir. 2010) (observing that the Sixth Amendment "guarantees a defendant the right to cross-examine the witnesses against him"). To be sure, a

> particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J.Wigmore, Evidence s 940, p. 775 (Chadbourn rev. 1970). [The Court has] recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionality protected right of cross-examination.

*Davis*, 415 U.S. at 316–17 (citing *Greene v. McElroy*, 360 U.S. 474, 496 (1959)).

In addition, "the suppression hearing is a critical stage of the prosecution which affects substantial rights of an accused person; the outcome of the hearing-the suppression vel non of evidence-may often determine the eventual outcome of conviction or acquittal." *United States v. Green*, 670 F.2d 1148, 1154 (D.C. Cir. 1981). Thus, "any limitations on the right of cross-examination (beyond the typical evidentiary rules limiting the scope to the subject matter of direct examination and to matters affecting witness credibility, Fed. R. Evid. 611(b)) must be justified by weighty considerations." *United States v. Hodge*, 19 F.3d 51, 53 (D.C. Cir. 1994) (quotation

marks omitted).

Here, the government points provides considerations justifying a prohibition on defense counsel from questioning Officers Hinostroza and Desir on matters that go directly to their credibility. Mr. Davis, however, has an immense interest in revealing these officers' unreliability and bias, as those revelations bear directly on whether Mr. Davis's rights were violated. Indeed, the entire basis for the officers' stop of Mr. Davis—and therefore the determination of whether Mr. Davis's Fourth Amendment rights were violated—hinges on the credibility of the officers who stopped him and what they saw before they did so. This Court, therefore, "must give [Mr. Davis] a realistic opportunity to ferret out a potential source of bias." *Wilson*, 605 F.3d at 1003.

Mr. Davis is not seeking to engage in overbroad, unparticularized examination of the officers' personnel files. Instead, counsel seeks to question the witnesses about matters that go directly to their credibility and bias-motives. Specifically, of the matters proffered by the government, Mr. Davis seeks to question Officer Hinostroza about the following:

- The 2017 adverse credibility determination by a Superior Court judge regarding a portion of Hinostroza's testimony.

- IS 24000536: On January 30, 2024, a citizen filed an OPC complaint against Investigator Hinostroza and other MPD members, alleging unlawful use of force and harassment. After an investigation, the harassment complaint against Investigator Hinostroza was sustained

- IS 20000191: On January 16, 2020, Investigator Hinostroza was involved in a vehicular accident while operating his squad vehicle. The accident was deemed preventable and Investigator Hinostroza was referred to DRD discipline. The final discipline is unknown

- IS 19000149: On January 1, 2019, Investigator Hinostroza failed to activate his BWC timely. He was given a P.D. 750 Dereliction Report.

- IS 18001192: On April 7, 2018, Investigator Hinostroza failed to activate his BWC timely, and he received corrective action and education.

- IS 25001905: On June 11, 2025, Investigator Hinostroza deployed his pepper spray during the arrest of the individual, who was fleeing from law enforcement. There

6

was no discipline of Investigator Hinostroza.

- IS 17002452: On August 2, 2017, Investigator Hinostroza received a Use of Force complaint after he used force during an arrest of a citizen. His actions were deemed justified but he received education and corrective action.

And Mr. Davis seeks to question Officer Desir about the following:

- IS 24000536: On January 7, 2024, Investigator Desir was found to have engaged in harassment when he stopped the complainant, handcuffed the complainant, and patted him down.

- IS 23000028: On December 7, 2024, Investigator Desir was found to have used profane language in response to a citizen directing profane language at him and "entering his personal space. He received policy training as a result.

- IS 19001404: On April 5, 2019, Investigator Desir was involved in an out of policy pursuit that resulted in a hit and run

- IS 19000560: On February 21, 2109, Investigator Desire was involved in a use of force where he and other officers engaged in a brief vehicular pursuit that resulted in the stop of the car they attempted to pull over. Investigator Desir used force, that is, he unholstered his firearm, but did not make "immediate notification" of their use of force. Investigator Desir received an Official Reprimand on his file for 18 months as a result.

- IS 19000811: On February 21, 2019, Investigator Desir failed to timely activate his body-worn camera in the above-mentioned incident (IS 19000560). He received a Letter of Prejudice for six months as punishment.

- IS 16002770: On August 25, 2016, Investigator Desir tried to avoid traffic by driving on the shoulder of the freeway, at which point he sideswiped a civilian car's side-view mirror. He received a PD 750 Form in his file for six months.

That the government's primary witnesses are unable or unwilling to abide by protocol and violate policy such that there is an escalation in discipline taken against them goes directly to their credibility. As one district court observed, "[e]vidence of a police officer's policy violations may call into question the veracity of his testimony, and repeated violations even more so." *Banks*, 2025 WL 642246, at *4 (considering that despite government's argument that officers' "reprimands are not covered by *Brady* or *Giglio* because they are neither favorable nor material" to the defendant, the government's argument "falls flat considering [the evidence's] obvious, if not overwhelming,

7

impeachment value.").

The government also argues that Mr. Davis should not be allowed to inquire into some of the incidents in the officers' personnel files that were not sustained or remain pending. The Court should allow Mr. Davis's inquiry into even those incidents for the reasons laid out in this brief, and one more—fundamental fairness. Should this case proceed to trial, the government will surely seek to admit all evidence the Court will allow under Rule 404(b). That rule permits admission of evidence against a criminal defendant of "any other crime, wrong, or act" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

Importantly, no conviction or other judicial or administrative determination is necessary for such evidence to be admissible. Put differently, when a defendant's liberty is at stake, the government often seeks—and some courts allow—uncharged conduct to prove a defendant acted with, for example, the requisite intent or knowledge. *See, e.g., United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000) ("Rule 404(b) is a rule of inclusion rather than exclusion." And though "quite permissive," a court "may exclude the evidence on the basis that it is unfairly prejudicial, cumulative or the like, its relevance notwithstanding." (quotation marks omitted)). Here, neither officer is in danger of losing their liberty or at risk of criminal prosecution. Instead, Mr. Davis seeks to question them solely in an effort to aid the Court in concluding whether and how his Fourth Amendment rights were violated.

## CONCLUSION

Contrary to the government's characterization, Mr. Davis seeks to conduct a targeted cross-examination of Officers Hinostroza and Desir. The misconduct complaints against the officers go directly to their credibility, which in turn is central to the legal questions with respect to the

suppression issue. It therefore remains proper for the Court to consider the allegations of misconduct against the officers in determining whether and how much to credit their testimony. For these reasons, and any other such reasons at a hearing before the Court, Mr. Davis respectfully requests this Court allow cross-examination on the officers' misconduct.

                                                  Respectfully Submitted,

                                                  A.J. KRAMER
                                                  FEDERAL PUBLIC DEFENDER

                                                  _____/s/_____
                                                  Eugene Ohm
                                                  Assistant Federal Public Defender
                                                  625 Indiana Ave., N.W.
                                                  Washington, D.C.  20004
                                                  (202) 208-7500